The next case on the call of the DACA is Agenda Number 11, Case Number 125330, Williamson County Board of Commissioners et al. v. Board of Trustees of the Illinois Municipal Retirement Fund. Mr. Chuliga, please. Good morning. May it please this Honorable Court, Counsel. My name is Vladimir Chuliga. I'm the Associate General Counsel for Defendants, Appellants, Board of Trustees for the Illinois Municipal Retirement Fund. The issue in this case is whether the certification requirement in Public Act 99-900 violates the Pension Protection Clause of the Illinois Constitution. Public Act 99-900 had three components, only one of which is at issue in this case. However, I think the other two provide some additional context for this Court. One component excluded from future participation all County Board members who were elected after the effective date of the Public Act, August 26, 2016. The second component required those County Board members who were participating in the fund to maintain monthly timesheets substantiated that they worked sufficient hours to meet the applicable hourly standard for qualification in IMRF. And the third component, which is at issue in this case, is what I call the certification requirement, required a participating County Board to certify the eligibility of elected County Board members of the elected County Board member position within 90 days of each general election. That's found in Section 7-137.2A of the Illinois Pension Code. IMRF's position is that this legislative change adopted in Public Act 99-900 did not terminate plaintiff's participation in the fund. Williamson County's inaction is what terminated plaintiff's participation in IMRF. That's the fundamental disagreement in this case. What was the effect of the legislative change? Now, in just a few moments, plaintiff's counsel will stand before this Court and tell you that this case is exactly like so many other cases involving the pension protection clause that have come before this Court. It's the legislature trying to take away benefits from current participants in the fund. It's exactly like Goodell. It's exactly like pension reform. It's exactly like Carmichael. But in this case, the impairment is much greater because their participation was terminated. IMRF's position is that that's completely distinguishable with this legislative change. There is nothing that any of the plaintiffs and the cases relied upon by the plaintiff's counsel could have done to avoid the effect of the legislative change. In Goodell, plaintiff could not have done anything to apply for military service credit once the legislative change was made. The legislation itself took away the substantive rights to buy military service credit. In in-right pension reform, there is nothing that the plaintiffs could do to avoid the reduction in their cost of living increases. In Carmichael, there is nothing that the plaintiffs could do to get their service credit for the time spent in a union position. In this case, the legislation itself provided a mechanism, a process, for avoiding the termination from the fund, certification by the eligible employer. Did the section, did that section change the participation requirements? It did not. The participation requirements for Williamson County had always been a 1,000-hour standard. That's the hourly standard that they adopted back in 1982. What this section did was that it created a mechanism or a process for determining whether the individuals in those positions met the hourly standard. If the certification requirement had actually terminated benefits, then there would not be any participating county board members in IMRF. And there are. There's 36 currently active participating county board members in IMRF throughout the state. That's the difference in this case. Substantive rights versus procedural changes. All of the cases relied upon by plaintiffs had substantive rights taken away under the legislative change that was challenged. In this case, the substantive rights of participation, if you met the eligibility requirements already in the statute, they didn't change. Just the process for determining whether those eligibility requirements were met changed. The process that was enacted in Public Act 99-900 required that the county employer, the board of trustees, the board of commissioners in this case, certify that the position of elected county board member pass a resolution in a public meeting stating that the position continues to require the sufficient hours to qualify for participation. In the past, or in another context, for regular employees, IMRF relies on someone called an authorized agent in every participating employer. IMRF has over 3,000 participating employers in its pension fund. Over 130,000 annuitants, 170,000 active members. So the legislature incorporated in IMRF's controlling statute someone called an authorized agent at every participating employer. That authorized agent is an individual who works or is related to that employer and certifies to IMRF whether an ordinary employee is eligible for IMRF participation. That's one way that IMRF gets information from an employer, specifically when it relates to a non-elected position. But in this case, some of the members were already members of the fund. Absolutely. All of the members were already participants in the fund. What this change did was it created a process to determine whether they continued to be eligible for participation. It's essentially acknowledging that public employment and public office changes over time. But wouldn't that diminish our impact on their pension benefits? No, Your Honor. The plaintiffs never had the benefit of participating if their position did not qualify for participation. And I think this court's decision in Peters v. The City of Springfield is instructive to this case. In that case, The City of Springfield implemented a mandatory retirement age by ordinance for its participating police officers and firefighters. By doing so, the employer, The City of Springfield, was conveying to the pension funds that no one over the age of 60 could accrue additional service credit. All of the participants, all of the plaintiffs in that case, were already qualified for participation in the Article 3 and Article 4 police and firefighter pension funds. They were already accruing service credit. Nonetheless, this action by the employer provided information to the pension funds now stating that they will no longer qualify for additional service credit. And this court said that that was okay. This court said that public employment isn't static. And there are a number of factors that might require that a public position be abolished, its function changed, or the terms of employment modified. The same is true for public office, for elected officials. Williamson County had not certified the eligibility of its county board members since 1982, when it first adopted the 1,000-hour standard. For ordinary employees, under IMRF's rules, IMRF's administrative rules, it asks authorized agents to review regular employees, regular positions, on an annual basis. I'm an employee of the Illinois Municipal Retirement Fund. If the employer decides some sort of job sharing or organizational restructuring where my position becomes part-time, the expectation is that the facts of the position have changed. And our authorized agent must communicate to the fund that I'm no longer eligible for participation, notwithstanding the fact that I'm currently participating. I'm currently accruing service credit. I'm currently in the fund. That's not a diminishment or impairment of constitutionally protected benefits. That's a change in the position. So what the legislative change was trying to accomplish was trying to get the information about positions that there was clearly some sort of skepticism on the part of the legislature as to their qualification for participation. Many of these positions had not been reviewed or recertified for decades. Whereas on the employment side, we're asking authorized agents to review all of their positions on an annual basis. Public employment and public office is no different than the private sector. Things change. Requirements change. Technology advances. Job sharing occurs. Restructuring occurs. So what this legislative change did was it didn't take away a substantive right. It created a process for employers to communicate to IMRF what the eligibility is of existing positions. It's a procedural change, not a substantive change. And it's important to note that IMRF had existing authority. IMRF as the administrative agency had existing authority under Section 7-183 to request information from participating employees or participating employers. This is one of the rights that the legislature has provided to IMRF. This certification requirement under Public Act 99-900 was exactly the same thing except by legislation and much narrower in scope. It only applied to county employers and was specific to the elected county board members. If IMRF had adopted by administrative rule a request to each county employer for a similar resolution for the factual determination of whether this position continues to meet the annual hourly standard and set a deadline, and Williamson County missed that deadline, the result would be the same. And that would be under the existing statutory authority that IMRF currently has. So if this court finds that the legislature couldn't do that by the adoption of a statute, in effect, the conclusion is that IMRF has greater authority to adopt administrative rules for the administration of the fund than the legislature has to adopt it by statutory change. Now, as an employee of the fund, I certainly think that the fund is closer to the ground and may have a closer eye as to what would be easier for administration, what would be a better approach or a good approach, but that's not the constitutional test. The constitutional test is whether a substantive right, a benefit, was diminished or impaired. Where a process has changed, a process for determining whether the eligibility standard continues to be met, that doesn't impair or diminish benefits. There isn't a single case that has found that a procedural update to the pension code has diminished or impaired pension benefits. Now, if the issue is with the deadline, if the issue is that just two weeks later or three weeks later after the deadline passed, the county board passed the resolution and said, here, IMRF, the position is qualified. If the issue is with the deadline, there's nothing in the pension protection clause that prohibits the imposition of deadlines. There's not a single case that will find that. There are deadlines all throughout the law, all throughout the Illinois pension code. For instance, police chiefs have historically been, police officers in general have historically been excluded from participation in IMRF. They participate in their local pension funds. Police chiefs, however, have historically had the opportunity to opt into IMRF rather than their Article III local police pension fund. They must make that election within 90 days of appointment. They wait 100 days, they lose that eligibility. They wait 200 days, they lose that eligibility. There's a deadline. If you miss the deadline, sometimes there are dire consequences. Administrative appeals. IMRF has imposed an administrative rule where a staff determination must be appealed within 63 days in order for an administrative appeal to be heard by the board of trustees. If that appeal is filed on the 64th day, they've lost their appeal rights. That could be a harsh consequence of a deadline. The same is true in the administrative review law, which is applied to IMRF. If someone doesn't like the final administrative decision reached by the IMRF board of trustees, they have 35 days to file an appeal. Otherwise, they've lost that right. Deadlines are prevalent in the law. Deadlines are not unconstitutional. Once an information request has been made by IMRF or by the legislature in this case, the employer's response provides the factual information to determine legal eligibility under the pension code. What the legislation was looking for was a factual determination by the county boards. And the reason, what I believe to be the reason why elected officials are treated differently than authorized agents is because elected officials are responsive to the public. There's no supervisory authority other than the voters. That's why back in 1968, and Clayton's counsel will reference this resolution, in 1968, the IMRF board of trustees adopted a resolution providing for a process, a process for determining the eligibility of governing board members of IMRF participating employers. The process was that the governing board itself had to take action at a public meeting, had to adopt a resolution stating that members of the governing board are in a position which qualifies for IMRF participation because it requires the necessary hours under the applicable hourly standard. That was an existing rule in 1968, and Clayton's counsel argued that Williamson County complied with that rule, and they did. They first complied with it in 1969 under the 600-hour standard, and then they complied with it in 1982 when they adopted the 1,000-hour standard, and that was the last time that it was revisited. What the legislature did is that it's been 40 years. In some cases, it's been longer. Some employers have not revisited, some counties have not revisited the eligibility of their elected county board members since the late 1960s, and the legislature decided that there needed to be an updated process for determining whether times change, whether technology change, staffing change, whether the means of those positions had changed, and the process was to put the entity that's responsive to the voters to take action in a public meeting stating that, yes, these positions require sufficient work to meet the annual hourly standard. It makes it reflective of the actual supervisors, the actual authority figures for elected officials. That's why for non-elected officials, an authorized agent, an employee, an elected official, someone who is appointed as the authorized agent makes the determination. An employer can decide whether an employee is working too much or not enough to fulfill their job duties. I can't walk into my school district's board meeting and say that the volunteer board member is not putting in enough hours or is putting in too many hours, right? So the evaluation is done by the governing body itself and should be responsive to the voters. That's why it's a resolution requirement. The process is different. The process is unique. Again, with IMRF being a multiple employer pension fund, you have a whole variety of different employers, different employees that participate in the fund, and there are specific rules that are applied for specific subclasses within the pension fund to determine whether the factual scenario of those positions continues to meet existing eligibility standards. That's what was done here. The process was updated. The process said after a general election in which a county board member was elected, then within 90 days the county board must get together at a public meeting and adopt a resolution stating that this position continues to require sufficient hours to meet the annual hourly standard. But the problem in this case was they passed the resolution, didn't they? But they didn't pass it until after the 90 days. Correct. Isn't that right? Correct. That's exactly right. And that goes back to my point about deadlines. There are deadlines all throughout the statute. There's deadlines all throughout the pension code. But I think the difference in this case is I referenced police chiefs. They have 90 days. If they miss that deadline, they're stuck forever. In this case, the way that the legislation is written, this isn't a permanent termination. I would read the legislation to mean that at the next election, they have the opportunity to certify again that the position qualifies. Now, that's not in the record. That's not in the record because this case came up on administrative review. And the record that was before the IMRF Board of Trustees at the time of termination was obviously before the second election had occurred. The timeline in this case was Public Act 99900 was adopted in August 26th of 2016. One of the individual plaintiffs was re-elected in November of 2016. The 90-day window was triggered. In February of 2017, they missed that deadline. IMRF began the administrative process of terminating them. It obviously went through the administrative appeal process. And what was incorporated into the record during that administrative appeal process is what's before this court today. Two years later, the election of 2018, one of the individual plaintiffs was re-elected. And the board did timely recertify the position. So this termination isn't nearly as dire as missing the deadlines in some of the other cases in the Illinois Pension Code. So, yes, they did make that certification late. They missed the deadline. But there's nothing in the statute or in the pension code that has ever been found to be unconstitutional because there was a deadline. If that was the determination, then IMRF would have the authority to request the information from participating employers but would never be able to impose a deadline. They'd never be able to enforce that record. That can't be the rule. That can't be the law. What is the case, though, is that the employer provides information. IMRF applies that information, that factual information, to the statutory requirements. The process is not what terminates participation. It's the underlying information. It's not a new eligibility rule. It's an acknowledgment that facts change. The legislative change did not terminate participation. It was a procedural update. Williamson County had the obligation to communicate the eligibility of county board members. Since the legislation itself did not change substantive rights, since it didn't terminate plaintiff's participation in IMRF, it couldn't have diminished or impaired pension benefits. Williamson County's inaction terminated participation. Therefore, there's no violation of the Pension Protection Clause. IMRF urges this court to reverse the circuit court's determination and to affirm IMRF's final administrative decision terminating participation of the individual plaintiffs. Thank you. Thank you, Mr. Shulman. Mr. Prosser? Good morning. My name is Don Prosser. I represent three county board members of Williamson County, Mr. Ellis, Mr. Gentry, and Mr. Malone. Now, we've seen an evolution in this case in the way this brief has gone. When you look at the first brief presented by the appellate in this matter, their contention was that, well, there's no right to be at issue here because all the case law is irrelevant and inapposite to this matter. But they don't explain that in that case, neither do they address the constitutional terms that were cited by the circuit court, which were that Article 13, Section 5 of the Constitution, makes the relationship of a public employee who's a member of a pension plan an enforceable contractual relationship, one that cannot be modified or changed or diminished or impaired unilaterally. That was the finding of the circuit court below. The original brief of the appellate here today did not even address that. All it said was, well, this was an intervening fact, and all the case law, whether it's Poudel, whether it's NRA pension reform, all those cases are irrelevant because they all did things immediately. All that we did, or the legislature did here, was set up a new condition, an admittedly new condition, for the continued participation of the plaintiffs in the IMR fund. Then, after the brief followed by the appellees, the appellates come forward and say, well, it's got nothing to do with that at all. It's a process issue. I don't think you'll see anything about process argued about this at any time until the reply brief. I'm going to address that issue in a moment. But I think the substantive question is, what does the change in the law of 99-900, Public Act 99-900, do to these plan participants? There are certain critical facts that are just ignored by the appellates. And the critical fact is, first of all, what does it take to be a member of the pension plan as a county board member when these men were first elected? We all agree, and there's no dispute about that, that there were only two statutory requirements for participation and membership in the fund. First was the applicant, the county board member, had to ask to be a part of the fund. That happened. The second requirement is that they had to provide the minimum hours of service in the position required for participation. In the case of this particular county, it's 1,000 hours annually. Now, here we have an undisputed fact in the record. No place does the pension fund contend that my clients failed either of those tests. At no time either, before or since they became members of this fund, did they cease to have 1,000 hours of service. That's the critical issue in this case about membership. And they don't contend. In fact, they know better. They know as a fact that because after this adoption of the 99-900, my clients turned in timesheets showing their participation of 1,000 hours and more in this position. If they hadn't turned in the timesheets, would their participation have been terminated? Well, they would have under the statute, under 99-900. Now, the issue that I have before you in this court doesn't address whether or not that was a constitutionally permissible new requirement for continued participation. And the reason it's not before you is because we provided those records. If we had not, then there would be a question about, is this a new requirement that is unconstitutionally applied? But that's not before you because that's not an issue. We know and they know that at no time have Ellis, Marlowe, or Gentry failed to meet the requirements of participation. Now, in answer to one of the justices' questions, it was asked, well, doesn't this termination affect their pensions or their rights under the plan? Because they were planned participants. And the answer given to you was, no, it doesn't. I'm flat-eared to say that that's just flat wrong. That's a dishonest statement, if anything, because the way the pension plan works, and you know it because it's not different from any of the other pensions you review over and over again, this pension sets the benefits on the basis of the service credits that are awarded to an employee at the time of retirement, as well as their summary or their final compensation. When the fund says, as of February 2017, we don't care how many more years you work, you don't get credit for it. We don't care what your compensation is after 2017. We don't give you credit for it because we've terminated you procedurally, as we would now understand it, from the point of view of the appellants. Now, I want to say that it's indisputable, and that's the reason they haven't questioned it, that there was a diminishment of what these people's rights are. In the case of Marlowe, he can't even get a pension. Counsel, I don't know that it's that disputed, really, that termination impaired their benefits. The issue is whether the enactment of the statute impaired their benefits. In the cases that we've reviewed, the second those statutes became effective, people's benefits were either benefits or potential benefits were reduced or taken away altogether. In this case, the argument is made by those in counsel that the second that that law was enacted and became effective, your clients were participating, continued to participate, and nothing ever happened until the county failed to comply with the statute. That's a fair question, Your Honor, and I'll try and address it. The argument made by the appellant, and well summarized by your summary, is that, well, all we did was set up a new condition for continued participation, which was not satisfied by February 6, 2017. It's not an eligibility requirement, says the appellant. It's just a procedural requirement. That statute did not exist when these men joined the fund. They had no such requirement upon them at that time. And when the legislature says, now the rules are different, if you want to stay in the fund, your employer, not you, but your employer, must make some step on this. And if your employer fails, if it misses the deadline, you're out of coverage. So where the appellant says the termination isn't the result of the statute, that's just absurd. Without this statute, these men would still have been participating, all of them would still be participating in this fund. Now, I don't think that any of the cases that you've heard before directly address the issue that you're raising in the effort to distinguish by the appellant. But I think there's a logical reason to think about this. Suppose that in considering the reductions and benefits that the court dealt with in the Ingray pension reform case, the legislature simply said, well, each of the respective bodies needs to take three steps and notify the respective, the employers must notify these people within 90 days or 120 days of this, or the pension benefits can be terminated. Suppose it said that. That's what he claims happened here. If that happened, would you, as this court, have concluded that there wasn't an adverse and a diminishment or a change in the contractual relationship of the employee with the pension fund? I don't see how you could reach that conclusion. And part of the dilemma that I have here is the way counsel confuses who's responsible for what. The employee, the public employee, once he becomes a member of this fund, is entitled to the protections and the benefits that he would have accrued as of the date of that employment. That's what you've said over and over again. I can cite you to cases, but I know that you know them. But the issue here is that's not what's happening here. Mr. Marlow can't accrue a service credit needed to get the eight years that he needs to obtain a new one. He's been terminated. Terminated not by his action, and here I would distinguish conduct that you found meaningful. You know in the Kerr case, this court said, Otto Kerr didn't get his pension. Why not? Because he was found guilty of a felony, and throughout the time that he'd been a member of the funds that he was contributing to, they all said if you're convicted of a felony, you don't qualify for an annuity. That wasn't anything new. That was the deal, the arrangement, the contractual relationship. What was the contractual relationship of Gentry, Ellis, and Marlow? We had to apply for the fund. We had to make 1,000 hours, and we've been doing it. Now let me address this new argument that I think we've had elaborated at great length today about process. Counsel suggests to you that there's no new eligibility requirement here, and if there's no new eligibility, then my men should have lost their membership. He says, well, it's not a new substantive requirement. It's still the same 1,000 hours. He doesn't question if the 1,000 hours has been provided. He says, instead, the employer messed up. The agent, in fact, is what he says in his opening brief, failed to read the communications from the IMRF, and the factual findings of the board at the hearing were that the individuals that I represent, Marlow, Ellis, and Gentry did not know that there was any new change or requirement in regard to this notification. If they don't know it, and it hasn't been communicated to them, how can they communicate anything as is suggested by counsel? He says in his brief that the IMRF was communicated a doubt by the pension board, to the employer that still 1,000 hours was going to be expected. This, I think, is just absolutely disingenuous. In the middle of February of 2017, the board is notified about the existence of this provision of Public Act 99900, and within a week or 10 days of that notification, they adopt the resolution. They never had any doubt that there were 1,000 hours going to be issued. Here is the governing board of Williamson County, and we know that. And to claim that this is somehow a reliance issue on a non-communication just doesn't make sense. But his better argument is not that. His better argument is to say, well, we have a deadline. Deadlines mean what they mean. If you don't want to fill within 35 days of the administrative ruling, you're out of court. Lots of rules like that in our system. But who didn't comply with the notice? Did Marlow fail to do anything? Like Kerner? No. Did Ellis? No. Did Gentry? No. The county failed to do it, and we know why, because they just didn't know that there was any expectation of them to do that. But how can the employer change the relationship of the employee after that has occurred? How does that fit with the constitutional argument? Well, the way I see it, Justice, is that when you review the pension protection clause, and you've done it several times, including the enacting legislation and all of that, the Constitutional Convention, one of the things you said was that we have to change the rules, the constitutional change, is that we won't treat pensions and pension plans as gratuities subject to change. We want to create certainty in this. And for the protection of the public employee, not with regard to whether or not we fund them or not, but for the protection of the public employee, the employee's rights are defined by the rights that exist when they join the pension fund. That's what I think is the thrust of the holdings of your various cases. And here, for these three plaintiffs, they didn't get that. They've had the rules change and say, I'm sorry, you're not going to get your pension from Mr. Marlow. I'm sorry for Mr. Ellis and Mr. Gentry. You won't get as much as you would have earned, even though you've continued to be on the county board, even though you've continued to provide 1,000 hours of service. Now, in terms of deadlines, I don't think the Constitution would prohibit the county from requiring its employees to do certain things in order to continue to participate in the fund. I'm not sure of that. We haven't seen it tested, but I don't think it would be an unconstitutional act. And I'm sure they could give them a reasonable time to do that. But it's not these plaintiffs as public employees that fail to give this notice to IMRF. It's the county of Williamson. And the proper remedy, it seems to me, was something raised by the circuit court in the examination back in the original hearing, is why shouldn't IMRF put some sanction on the county for not making timely notices if they're important? And the answer is they could have, but they didn't. The legislature, according to counsel, is suspicious that county board members were not providing the number of hours fitted. I don't know where that comes from. It's not in the record. It's not in the legislative history that I've seen. But regardless of that, regardless of what suspicion they may have had, they can't change the rules of participation. We can't be standing angels on a pinhead and say eligibility's not changed, but the benefits are. Participation is lost, but that's not an eligibility requirement. That's a twist of law that I don't think is meaningful. Is the county board required to make the certification? The answer to your question is the county board was not required by IMRF to ever recertify their findings back in, I think, we heard today. This is really outside the record, but after it was written that 1,000 hours was adopted in 1982. They were never asked to redo that, not required to do that, or whatever. But I would say in response to your question, counsel cites in his opening brief a manual, which I don't know what the effect of that is in terms of what they direct IMRF agents to do, but he does quote accurately that it suggested that positions be reviewed annually to see if there are changes and if there's any reason to believe that the position doesn't qualify for the minimum hours of service and the like. What he didn't quote to you is what the manual says. If there is such a review and there is a determination that it's the case, what the manual says is if the elected position no longer qualifies for participation, the governing body, that's not the employee, but the governing body, should pass a resolution to terminate participation of the position. See form 6.64T, which was an exhibit to this manual. Now that form basically says changes have been made. Employment requests are different. We no longer think that 1,000 hours will be required of our county board members. That never was filed, never asked to be filed, and counsel knows that it didn't even happen. It didn't happen. Indeed, these men work many more hours than 1,000 hours a year and always have. It's in a sense incredible to me that he says, well, Boudel doesn't count, because in Boudel he could buy his military pensions after the enactment of this legislation, so he lost immediately, and that's different from our facts here. I don't understand the distinction. What we have here in our facts is that after 99-900 and without actual notice to the governing board of Williamson County, these members were no longer allowed to participate in the fund. I'm sorry. Oh, I'm sorry. Thank you. I appreciate your time. Thank you very much. Mr. Schillegel. Thank you, Your Honor. I want to address a few things, hopefully relatively briefly, for this court. First of all, on the issue of whether IMRF is disputing whether a termination occurred. So from a factual standpoint, termination is a diminishment, right? If IMRF fires me today, my pension stops accruing additional service credit. But that's not the sort of diminishment that the Pension Protection Clause protects. There isn't a single case that will find that. I think that's exactly what the facts of Peters v. City of Springfield are. There are certain things that can happen to employment or elective office that would end additional accrual of service credit. That's not the sort of thing that the Pension Protection Clause has ever prevented. This court has never told an employer that you can't fire somebody because it's going to reduce their accrual of service credit. So yes, the math stops running when they're terminating, yes. But that's not the sort of diminishment or impairment that's protected by the Pension Protection Clause. I also want to address this issue, this distinction that counsel is drawing between the employee and the employer. I think that's a very interesting argument in this particular case because the individuals in this case are the county board. They are the employer that should have taken action. They're proceeding as individual plaintiffs, but they are the board of commissioners for Williamson County. It was their failure. Their failure caused the termination. This notion that the employee had a contractual right and the employer failed, well, in this case, that's a distinction without a difference. Unlike some of the other cases. Let's say, for example, there's nothing that the employee could have done, there's nothing that the employer could have done. In this case, I suppose you could argue that the individuals on their own couldn't do anything, but collectively as a body, they certainly could have. They had the same right to certify that the position continued to require the hours necessary for participation. Council also knows that there's no dispute that the individuals are providing the necessary hours of work. I'll say this, I don't know. I don't know whether that's true or not true. If we haven't made any administrative determinations to terminate them based on the timesheets that were submitted, I won't dispute that fact. But the question that the county board has to answer with respect to the certification requirement is whether the position normally requires sufficient hours. Not whether an individual works enough hours in that position, it's what's required of the position. And this is, again, an important distinction for elected officials. If I get elected to the county board, there's no one telling me how much or how little I have to show up in order to fulfill my duties. If I'm an employee and I don't show up enough, there's employment action that the employer can take. So a position, a county board position, can be fulfilled at a variety of different hours, and the only oversight is the next election. So what can't happen, what can't happen is an individual can't transform a non-qualifying position into a qualifying position by simply showing up. Right? If the ordinary requirement of a county board position is, let's say, 500 hours. Someone decides, I would like to participate in IMRI. They can't simply show up to the office more in order to become eligible. That's why we have this requirement of the county board to determine what's required of the position. You have to get together at a public meeting, pass a resolution saying, this position requires more than 1,000 hours. Whether an individual spends 20 hours, 1,000 hours, or 2,000 hours, that's not what's asked of the county board. The county board says, what's actually required of the position? So whether the individuals in that position provide more than 1,000 hours, that could certainly be instructive to the county board. Don't get me wrong. If everybody's working more than 1,000 hours, that certainly may be instructive to the county board to say, yes, this position does require more hours. But that's not the question. The question is that the county board took action and said what's required of the position, the position, not the individuals performing the job, but of the position was more than 1,000 hours necessary for participation. Counsel spent some time discussing that there were factual findings in the underlying record that notice wasn't given to the county board. Now, I don't believe that notice is an issue for this particular constitutional question. But if it is, and if this court believes that it's significant, I would point you to counsel's argument that the individuals immediately began filing timesheets, tracking their time. Now, the timesheet requirement isn't before this court, but it's the exact same public act. So they either had notice of half of the law or some of the law, or they had notice of the law and didn't comply. And, again, I don't believe that notice is necessarily important for the constitutional provision. But I think there's sufficient evidence in the record that they did have notice if it is important for this court's consideration. Counsel also disputed that there was any doubt ever communicated by the county board. And he points to the 664T requirements. Now, there are two ways that something can be conveyed in my mind, probably more than two ways. But the two ways that come to mind is action and inaction. A 664T can be adopted at any time. At any time a county board or any other governing body can adopt a resolution stating, as of today, this position no longer qualifies. That's actively communicating to the fund that the position no longer qualifies and it's terminated upon whatever that date is. The other way that information can be communicated is by inaction. And that's what Public Act 99900, the certification requirement, did. It said, county boards, after a general election in which one of your members is elected or reelected, you have 90 days to take action. If you do not take action, the implication is if you do not take action, the position will not be considered to require the necessary hours for participation. Counsel, let me ask you this. Does the passage of the resolution, whether it's called procedural or substantive, does it impact membership eligibility? So the passage of the resolution, yes, would preserve eligibility. So it does impact membership eligibility? Correct. Now, let me ask you this. Mr. Prosser made the comment that when these three members became members of the IMRF, they only had to do two things. One, ask or apply. And two, satisfy the minimum hours requirement. Do you agree with that? I do not agree with that, Your Honor. So what other requirement was there beyond those two? So the second requirement that Mr. Prosser outlined says that the individuals had to provide the service. They had to work more than 1,000 hours. And that's why I wanted to draw the important distinction. It's not them working the hours. The employer has to state that the position normally requires sufficient hours. The employer has to communicate to IMRF that the position requires sufficient hours. So it's not them necessarily working the hours. It's that they're in a position that normally requires sufficient hours for participation. And the method for communicating that information is different for the governing body elected officials versus normal employees. So maybe I characterized that the wrong way. Was there more than two requirements? No. So would you agree, then, that the passage of this law, whether it's substantive or procedural, that created a third eligibility requirement? No, Your Honor. I would not agree with that because the way that the second requirement is met, that's what was changed. How do we get that information? IMRF, again, multi-employer pension fund. We rely significantly on our employers because there's 3,000 of them. Probably the best way to monitor everybody's hours worked would be to have IMRF have an employee at every single participating employer. But I don't know that the taxpayers of Illinois would want IMRF to have more than 3,000 employees. So it's the method by which we gather information to make a factual determination. And whether that second eligibility requirement is met, that can be communicated in a variety of ways. And what this legislation did was it created a process to get the information. This is the way that you get the information to determine whether that second eligibility requirement is met. And that's the important distinction in this case versus all of the preceding cases that have come before this court with respect to the pension protection clause. It's a process, a procedural way for us to gather information to determine whether the existing eligibility requirements that are already in the statute were met. Thank you. Case number 125330, Williamson County Board of Commissioners et al. versus the Board of Trustees of the Illinois Municipal Retirement Fund et al. is taken under advisement as agenda number 11. And Mr. Shigula and Mr. Crosswood, thank you for your arguments.